UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBIN OWENS,                                              Case No.
    Plaintiff,
v.

ANGELA WALDON,
    Defendant.
_____/

## VERIFIED COMPLAINT FOR ELDER EXPLOITATION, BREACH OF FIDUCIARY DUTY, PARTITION, INJUNCTION AND RELATED RELIEF

Plaintiff, Robin Owens, by and through the undersigned counsel, hereby brings this action for damages, injunctive relief, restitution, and partition pursuant 28 U.S.C. §§ 1332, 1367 (diversity and supplemental jurisdiction); §§ 415.1111, 772.11, 825.1035, 64.011 et seq, Florida Statutes; and Colorado Revised Statutes, § 38-28-101 et seq. In support, Ms. Owens states:

## I.    NATURE OF THE ACTION

This action arises from Defendant's systematic financial exploitation of Plaintiff, a 68-year-old elderly person and vulnerable adult. Over more than a decade, Defendant cultivated a romantic relationship with Plaintiff and positioned herself as Plaintiff's trusted financial advisor. As Plaintiff's reliance on Defendant grew, Defendant exploited that trust to acquire multiple properties using Plaintiff's savings, credit, and home equity—while concealing ownership arrangements, diverting rental income, and blocking Plaintiff's access to financial records.

Defendant procured a Power of Attorney from Plaintiff and used it to purchase a Colorado property solely in Defendant's name, funded by Plaintiff's credit and a Home Equity Line of Credit ("HELOC") with a $110,000.00 limit  placed on Plaintiff's

Florida home without Plaintiff's informed consent. Through deception, impersonation, and financial domination, Defendant has secured for herself more than $1,000,000.00 in property assets for her primary or exclusive benefit, including $228,875.00 in down payments paid by Plaintiff (exclusive of closing costs), rental income exceeding $78,000.00, and exclusive ownership of a $550,000.00 Colorado Property.

Plaintiff brings claims under Florida statutory and common law, and parallel causes of action under Colorado law relating to the real properties Defendant caused to be acquired using Plaintiff's funds, credit, and equity. Plaintiff seeks compensatory and punitive damages, damages for civil theft, imposition of constructive trusts, partition of properties, equitable accounting, injunctive relief, and attorney's fees under Florida and Colorado law.

## II.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a citizen of Florida, Defendant is a citizen of Colorado, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.    The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over all state-law claims forming part of the same case or controversy.

3.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claims occurred in the Middle District of Florida, including execution of mortgage documents, transfer of funds, and acquisition and management of real properties located in Pinellas and Manatee Counties.

4.      Personal jurisdiction exists over Defendant because she purposely availed herself of the privilege of conducting activities in Florida, including acquiring Florida real property jointly with Plaintiff, participating in Florida-based mortgage transactions, receiving funds from Plaintiff in Florida, and directing fraudulent conduct and financial exploitation toward a Florida resident.

## III.    THE PARTIES

5.      Plaintiff, ROBIN A. OWENS, is a 68-year-old individual and citizen of the State of Florida, residing in St. Petersburg, Pinellas County, Florida. Plaintiff qualifies as an elderly person and vulnerable adult under Florida Statutes. §§ 415.102 and 825.103(1).

6.      Defendant, ANGELA M. WALDON, is a 52-year-old individual and citizen of the State of Colorado, believed to be residing at 657 1st Street, Loveland, Colorado 80537. Defendant is a traveling medical imaging technician who has maintained residences in multiple states, including Florida.

7.      At all relevant times, Defendant maintained a long-distance romantic relationship with Plaintiff and repeatedly resided with Plaintiff in Florida for extended periods between traveling work assignments.

## IV.    STATUTORY DEFINITIONS AND PLAINTIFF'S STATUS AS AN ELDERLY, VULNERABLE, AND AT-RISK ADULT

8.      Plaintiff qualifies as an "elderly person" and "vulnerable adult" under Florida law. An elderly person is an individual sixty years of age or older who suffers from infirmities of aging such that her ability to care for or protect herself is impaired. Section 415.102(8), Fla. Stat. A vulnerable adult is a person whose ability to provide

for her own care or protection is impaired due to infirmities of aging, organic brain damage, or mental or emotional dysfunction. Section 415.102(28), Fla. Stat. At all relevant times, Plaintiff was over sixty years old and experienced age-related cognitive impairment and diminished ability to understand complex financial transactions, causing her to rely on Defendant for financial guidance and decision-making.

9.    Defendant knew of Plaintiff's impairments, observed Plaintiff's confusion with financial matters, and repeatedly assured Plaintiff that Defendant would "handle" financial and legal matters—encouraging Plaintiff to relinquish oversight and control.

10.    Florida law defines "exploitation" as knowingly obtaining or using the funds, assets, or property of an elderly or vulnerable adult with intent to deprive that person of the benefit of those assets or to benefit someone other than the vulnerable adult. Section 825.103(1), Fla. Stat. Although Section 825.103 is a criminal statute, its definitions inform civil claims for breach of fiduciary duty, constructive fraud, and unjust enrichment.

11.    Colorado law similarly protects "at-risk adults"—persons susceptible to exploitation because they are unable to protect themselves due to mental, emotional, or physical impairment. Sections 18-6.5-102(14), -103(5), C.R.S. At all times relevant to Defendant's conduct in Colorado, Plaintiff qualified as an at-risk adult, and Defendant's conduct constitutes exploitation under Colorado law.

## V.    FACTUAL ALLEGATIONS

### A.    Parties' Relationship and Defendant's Assumption of Control

12.    Plaintiff and Defendant met in Colorado in late 2012 and maintained a romantic relationship spanning thirteen years. Plaintiff believed the relationship to be committed and based on mutual trust.

13.    Defendant, a traveling medical imaging technician, resided with Plaintiff for six to eight months at a time between work assignments. During these periods, Defendant embedded herself in Plaintiff's personal and financial life and gradually assumed control over Plaintiff's financial decision-making.

14.    As Plaintiff aged, she experienced noticeable cognitive decline, including difficulty understanding financial and legal terminology, confusion navigating online accounts, and diminished confidence in making independent financial and legal decisions.

15.    Defendant observed these impairments firsthand. As Plaintiff's vulnerabilities intensified, Defendant positioned herself as Plaintiff's primary financial guide and decision-maker, assuring Plaintiff she would "take care of everything" so Plaintiff "didn't need to worry."

16.    Plaintiff trusted and relied on Defendant emotionally, cognitively, and practically. This reliance—combined with cognitive impairment—created a dynamic in which Plaintiff deferred to Defendant's judgment and lacked the clarity to independently evaluate financial risks or the consequences of the transactions Defendant orchestrated.

17.    Throughout the relevant period, Defendant used Plaintiff's email address and identity to complete mortgage applications, receive loan documents, and conduct

transaction-related communications—often without Plaintiff's knowledge—causing Plaintiff to become financially obligated without informed consent.

**B.    The Florida Property Acquisitions (2021)**

18.    Between 2021 and 2024, Defendant orchestrated the acquisition of three residential properties across two states with an aggregate value of nearly $1.4 million, using Plaintiff's savings, credit, and home equity. Although Plaintiff provided 100% of the down payment funds required for each acquisition, Defendant structured these transactions to vest equal or exclusive ownership rights and benefits for herself without Plaintiff's informed consent.

**(1) *The Manatee Property***

19.    In late 2021, Defendant persuaded Plaintiff to purchase a home at **1418 29th Street West, Bradenton, Florida** (the "Manatee Property"), representing it as a shared investment to support their future together.

20.    The Manatee Property was purchased on October 28, 2021, for $445,00.00, financed by a $319,500.00 mortgage from United Wholesale Mortgage executed by both parties as co-borrowers. A true and correct copy of the Manatee Warranty Deed and Manatee Mortgage, recorded November 2, 2021, are  attached hereto as Exhibits A and B, respectively.

21.    Plaintiff contributed 100% of the $125,500.00 down payment  (exclusive of closing costs) from the proceeds of the sale of her prior residence and funds from her limited personal savings. Defendant contributed nothing.

22.    As of October 2025, the outstanding mortgage balance on the Manatee Property was approximately $307,174.00.

23.     Beginning in 2022, Defendant rented the Manatee Property through short-term rental platforms, generating more than $78,000.00 in gross rental income through 2025. Defendant retained 100% of this income, provided no accounting to Plaintiff, and credited Plaintiff nothing.

24.     Despite the substantial rental income, Defendant required Plaintiff to remit $1,500.00  per month for purported mortgage and property expenses—totaling approximately $69,000.00—while denying Plaintiff access to rental accounts, mortgage statements, or property management records.

25.     Defendant denied Plaintiff physical access to the property, treating it as Defendant's exclusive asset while exploiting Plaintiff for its costs.

26.     When in Florida, Defendant used the Manatee Property as her personal residence, occupying it rent-free during periods between rental bookings—further extracting value for her own benefit from a property funded entirely by Plaintiff.

### *(2) The Pinellas Property*

27.     In December 2021, Defendant induced Plaintiff to purchase a second home at **4136 52nd Avenue South, St. Petersburg, Florida** (the "Pinellas Property"), again representing it as a shared investment.

28.     The Pinellas Property was purchased on December 28, 2021, for $407,500.00, financed by a $304,125.00 mortgage from Regions Bank executed by both parties as co-borrowers. A true and correct copy of the Pinellas Warranty Deed and Pinellas Mortgage, recorded December 29, 2021, are  attached hereto as Exhibits C and D, respectively.

29.    Plaintiff again contributed 100% of the $103,375.00 down payment (exclusive of closing costs) from her limited savings. Defendant contributed nothing.

30.    Plaintiff currently resides in the Pinellas Property as her homestead and makes all mortgage payments. As of October 2025, the outstanding mortgage balance on the Pinellas Property is approximately $210,654.00.

31.    Defendant restricted Plaintiff's access to mortgage records and lender portals  and required Plaintiff to transmit mortgage payments for the Pinellas Property to Defendant rather than directly to the lender, without providing confirmation, documentation  or accountings.

**C. <u>Defendant's Manipulation of Property Titles</u>**

32.    In March 2023, Defendant caused Plaintiff to execute Quitclaim Deeds on both Florida properties, converting ownership from fee simple to "joint tenants with full rights of survivorship."

33.    Defendant told Plaintiff the deeds were routine "corrections." Defendant did not explain—and Plaintiff did not understand—that this change eliminated Plaintiff's right to devise her ownership interest in the properties to her adult children upon death and instead guaranteed that Defendant would automatically inherit Plaintiff's interest in both properties.

34.    Through these Quitclaim Deeds, Defendant secured irrevocable survivorship rights in properties funded entirely by Plaintiff, without Plaintiff's informed consent. A true and correct copy of the Manatee Quitclaim Deed and Pinellas Quitclaim Deed are attached hereto as Exhibits E and F, respectively.

**D.**    **Unauthorized Credit Account**

35.    In January 2022, Defendant opened a Home Depot credit account in Plaintiff's name with a $12,900.00 limit, using Plaintiff's Social Security number and personal information without authorization.

36.    Plaintiff did not apply for, authorize, or benefit from this account. Upon discovering it in September 2025, Plaintiff paid off the balance and closed the account to prevent further credit damage. Defendant did not reimburse Plaintiff.

**E.**    **The HELOC and Power of Attorney**

37.    In March 2024, Defendant caused the Pinellas Property to be encumbered with a Home Equity Line of Credit ("HELOC") with a credit limit of $110,000.00. Defendant handled all lender communications, often using Plaintiff's email address and identity credentials without Plaintiff's knowledge.  A true and correct copy of the HELOC, recorded March 29, 2024, is attached hereto as Exhibit G.

38.    Plaintiff did not apply for, negotiate, or meaningfully understand the HELOC and has never withdrawn funds from it. As of October 2025, the outstanding HELOC balance was approximately $66,000.00.

39.    Plaintiff was never provided copies of HELOC closing documents or monthly statements for the HELOC account.

40.    On April 2, 2024, Defendant presented Plaintiff with a document described as required for "credit verification." Trusting Defendant, Plaintiff signed without understanding the nature or legal consequences of the document.

41.    The document was a Statutory Form Power of Attorney granting Defendant broad authority over Plaintiff's financial affairs, including authority to

execute deeds, promissory notes, and real estate transactions—including conveyances to Defendant alone.

42.     Defendant recorded the Power of Attorney in Larimer County, Colorado, on April 9, 2024, and immediately used it to acquire property solely in Defendant's name using Plaintiff's assets. A true and correct copy of the POA is attached hereto as Exhibit H.

   F.    **The Colorado Property Scheme (2024)**

43.     In early 2024, Defendant told Plaintiff of a "joint investment opportunity" in Colorado, stating Plaintiff's information was needed only to verify Defendant's credit qualifications.

44.     On April 5, 2024, Defendant purchased 657 West 1st Street, Loveland, Colorado (the "Colorado Property") for $514,900.00. Defendant used an approximately $30,000.00 draw from the HELOC on Plaintiff's Pinellas Property to fund the down payment and closing costs for the Colorado Property. A true and correct copy of the Warranty Deed and Colorado Deed of Trust (Mortgage) are attached hereto as Exhibits I and J, respectively.

45.     Using the Power of Attorney, Defendant executed all mortgage applications, disclosures, and closing documents without Plaintiff's knowledge or informed consent.

46.     Defendant caused title to be vested exclusively in Defendant's name alone, "in severalty," despite using Plaintiff's equity, credit, and legal authority to acquire the property.

47.     In February 2025, Defendant refinanced the Colorado Property—again solely in Defendant's name—replacing the original $505,573.00 mortgage with a new $509,111.00 loan, further cementing Defendant's exclusive ownership of the Colorado Property without compensating Plaintiff.

48.     As of October 2025, public records identify the mortgage on the Colorado Property as a debt attributable to Plaintiff, yet Plaintiff was never provided copies of the deeds, mortgage documents, or closing statements.

### G.     Ongoing Concealment, Control, and Threats

49.     From 2021 to present, Defendant has required Plaintiff to remit approximately $3,100.00 per month via Zelle—$1,600.00 for the Pinellas Property and $1,50.00 for the Manatee Property—for purported mortgage and property expenses. Over four years, Plaintiff has paid Defendant more than $148,000.00 through these transfers without documentation that Defendant remitted funds to the lenders.

50.      Throughout this period, Defendant blocked Plaintiff's access to all mortgage portals, the HELOC account, rental platforms, and bank statements, preventing Plaintiff from verifying payments, balances, or income. When Plaintiff sought transparency, Defendant refused and used emotional manipulation and Plaintiff's cognitive vulnerabilities to deter further inquiry.

51.     Only in late summer 2025 did Plaintiff begin to uncover the true nature of Defendant's conduct—including misuse of her identity, diversion of rental income, retitling of the Florida properties, exclusive titling of the Colorado Property, and the existence and ever-increasing balance of the HELOC.

52.     Through her own efforts, Plaintiff recently obtained access to two accounts: (a) the "Vacasa" vacation rental portal for the Manatee Property, and (b) a joint Chase checking account opened in 2022 to deposit rental income and pay expenses for the Manatee Property. A review of these accounts confirms that Defendant used the Manatee Property and associated accounts for Defendant's primary benefit without Plaintiff's knowledge or informed consent.

53.     Upon discovering the scope of Defendant's exploitation, Plaintiff requested permission to remit her $3,100.00 monthly payments directly to the mortgage lenders rather than to Defendant. Defendant refused.

54.     Plaintiff continues to remit the $3,100.00 monthly payments to Defendant via Zelle without receiving any accounting.

55.     Defendant's conduct in acquiring the Colorado Property through deception, abuse of the POA, and exploitation of Plaintiff's age-related cognitive vulnerabilities constitutes exploitation of an at-risk adult under Colorado Revised Statutes §§ 18-6.5-102(14) and -103(5) and informs the wrongful nature of Defendant's actions under Colorado law.

56.     On December 8, 2025, Defendant escalated her conduct by sending Plaintiff a text message demanding additional funds and threatening to remove Plaintiff from her home, as follows:

**I need you to put some money in the Bradenton account to help out. You are not going to be living where you're living if you don't participate and help me pay for things.**

### H.    <u>Summary of Damages</u>

57.    As a direct result of Defendant's conduct, Plaintiff has suffered damages including, but not limited to:

    a.    Down payments on the Florida properties paid entirely with  Plaintiff's funds: $228,875.00;

    b.    Monthly payments remitted to Defendant via Zelle: exceeding $148,000.00;

    c.    Rental income from the Manatee Property diverted by Defendant: exceeding $78,000.00;

    d.    HELOC proceeds used for Defendant's exclusive benefit: at least $29,000.00;

    e.    Colorado Property value acquired using Plaintiff's funds, credit, equity, and authority: approximately $550,000.00; and

    f.    Unauthorized credit charges on the Home Depot account: amount to be determined through discovery.

58.    In addition, Defendant has failed to contribute toward the mortgage obligations on the jointly owned Florida properties despite being a co-borrower on both mortgages. Plaintiff has paid 100% of all mortgage payments on the Pinellas Property—her primary residence—entitling her to contribution from Defendant for Defendant's proportionate share. Plaintiff has also paid approximately $69,000.00 toward the Manatee Property while Defendant collected and retained over $78,000.00 in rental income without crediting Plaintiff or applying any proceeds to joint obligations.

59.    Furthermore, by causing Plaintiff to execute Quitclaim Deeds converting ownership of the Florida properties to joint tenancy with right of survivorship, Defendant obtained irrevocable survivorship rights without contributing any funds and without Plaintiff's informed consent. This conversion eliminated Plaintiff's right to devise her property interests to her adult children and ensured that Defendant—who

contributed nothing—will automatically inherit Plaintiff's entire interest upon Plaintiff's death. The value of Defendant's fraudulently obtained survivorship interest cannot be precisely quantified but represents a substantial deprivation of Plaintiff's property rights, autonomy, and testamentary freedom.

60.    As a direct result of Defendant's exploitation, Plaintiff—a 68-year-old retiree living on fixed income—has been left with no liquid savings, maxed credit, and insufficient resources to meet basic living expenses. The lifetime savings Plaintiff accumulated over decades of work have been depleted to fund properties from which Defendant derives primary or exclusive benefit while Plaintiff struggles to afford daily necessities.

61.    Plaintiff's total damages exceed **$1,000,000.00**, exclusive of possible treble damages that may be pled under Section 772.11, Florida Statutes, punitive damages, prejudgment interest, and attorney's fees.

## VI.    CAUSES OF ACTION

### COUNT I
### EXPLOITATION OF AN ELDERLY PERSON (§ 415.1111, Fla. Stat. )

62.    Plaintiff incorporates by reference ¶ 5 (Plaintiff's age and status), ¶¶ 8 through 9 (Plaintiff's qualification as elderly person and vulnerable adult, and Defendant's knowledge of Plaintiff's impairments), ¶¶ 12 through 17 (relationship and Defendant's assumption of control), and ¶¶ 19 through 48 (Manatee, Pinellas, and Colorado property schemes, title manipulation, HELOC, and POA abuse), as though fully set forth herein.

63.    Plaintiff is an "elderly person" as defined by Section 825.101, Florida Statutes, being 68 years of age at all relevant times. Plaintiff is also a "vulnerable adult"

as defined by Section 415.102(28), Florida Statutes, due to age-related cognitive impairment that impaired her ability to protect herself from exploitation.

64.    Defendant stood in a position of trust and confidence with Plaintiff based on their thirteen-year romantic relationship and Defendant's assumption of control over Plaintiff's financial decision-making. Defendant observed Plaintiff's cognitive decline and exploited it, assuring Plaintiff she would "take care of" all financial matters.

65.    Defendant's conduct constitutes "exploitation" as defined by Section 825.103, Florida Statutes, in that Defendant knowingly, by deception or intimidation, obtained or used, or endeavored to obtain or use, Plaintiff's funds, assets, or property with the intent to temporarily or permanently deprive Plaintiff of the use, benefit, or possession thereof, including but not limited to:

a.    obtaining Plaintiff's down payment contributions ($228,875.00) for properties in which Defendant secured equal or exclusive ownership;

b.    diverting 100% of rental income from the Manatee Property ($78,000.00+) while requiring Plaintiff to continue monthly expense payments;

c.    obtaining a Power of Attorney through fraud and using it to acquire the Colorado Property solely in Defendant's name;

d.    encumbering Plaintiff's home with a $110,000.00 HELOC without informed consent and using the proceeds for Defendant's exclusive benefit;

e.    manipulating property titles to secure survivorship rights worth approximately $265,759.00 without Plaintiff's informed consent; and

f.    opening unauthorized credit accounts in Plaintiff's name.

66.    Pursuant to Section 415.1111, Florida Statutes, Plaintiff is entitled to recover actual damages, punitive damages, and attorneys' fees and costs.

**WHEREFORE,** Plaintiff demands judgment against Defendant for actual damages, punitive damages, attorneys' fees and costs pursuant to Section 415.1111, Florida Statutes, and such other relief as the Court deems just and proper.

**COUNT II**
**CIVIL THEFT (§ 772.11, Fla. Stat. )**

67.    Plaintiff incorporates by reference ¶¶ 19 through 26 (Manatee Property and rental income), ¶¶ 32 through 34 (Quitclaim Deed manipulation and survivorship interests), ¶¶ 35 through 36 (Home Depot unauthorized account), ¶¶ 37 through 42 (HELOC and Power of Attorney), ¶¶ 43 through 48 (Colorado Property scheme), and ¶¶ 49 through 54 (ongoing concealment and entrusted funds) as though fully set forth herein.

68.    Defendant's conduct constitutes theft as defined in Section 812.014, Florida Statutes. Where a person lawfully obtains possession of property through a fiduciary or trust relationship but fraudulently converts that property to her own use in violation of her fiduciary duties, she commits theft by embezzlement.

69.    Defendant, by virtue of the confidential relationship and Power of Attorney, lawfully obtained access to Plaintiff's funds, accounts, and property interests. Defendant thereafter converted the following property of Plaintiff to Defendant's own use.

   a.    **Plaintiff's Share of Rental Income:** Defendant collected more than $78,000 in gross rental income from the Manatee Property. Although Defendant had lawful access to receive this income as co-tenant and property manager, Plaintiff's share of such income (at least $39,000.00) was property "of another" that Defendant converted to her own use by retaining 100% of the proceeds while providing no accounting and crediting Plaintiff nothing.

   b.    **Plaintiff's Equity Interest in the Colorado Property:** Defendant drew at least $29,000.00 from the HELOC on Plaintiff's home—funds rightfully

belonging to Plaintiff—and used them to purchase the Colorado Property solely in Defendant's name. By acquiring sole title to property purchased with Plaintiff's funds, Defendant converted Plaintiff's equity interest to her own use.

c.    **Plaintiff's Survivorship and Remainder Interests:** Through fraudulent Quitclaim Deeds, Defendant obtained survivorship rights in both Florida properties—the right to automatically inherit Plaintiff's entire interest upon Plaintiff's death. These survivorship rights, worth approximately $265,759.00 (representing Plaintiff's equity in both properties), are intangible property interests that Defendant obtained through fraud. By eliminating Plaintiff's right to devise her property interests to her children, Defendant stole Plaintiff's remainder interest and testamentary freedom.

d.    **Entrusted Mortgage Funds:** Plaintiff remitted approximately $3,100.00 per month to Defendant via Zelle, entrusted for the specific purpose of mortgage payments on the Florida properties. To the extent Defendant failed to apply these funds to mortgage obligations or retained excess amounts, she embezzled these funds for her own use.

e.    **Unauthorized Credit Account:** Defendant opened a Home Depot credit account in Plaintiff's name using Plaintiff's Social Security number without authorization and made charges for Defendant's benefit. This constitutes theft by identity fraud.

70.    The aggregate value of Plaintiff's stolen and/or embezzled property exceeds $333,000.00, calculated as follows:

a.    Plaintiff's rental income share: $39,000.00

b.    Plaintiff's Share of Colorado Property equity: $29,000.00

c.    Plaintiff's Survivorship interests in Florida Properties: $265,759.00

d.    Entrusted funds and Home Depot charges: amount to be determined

71.    Plaintiff made written demand for return of the stolen property and/or payment of damages pursuant to Section 772.11, Florida Statutes, sent contemporaneously with the filing of this action. Plaintiff reserves the right to amend this claim to assert treble damages should Defendant fail to comply with the demand.

72.    Plaintiff is entitled to recover  her actual damages, plus attorneys' fees and court costs, pursuant to Section 772.11, Florida Statutes.

WHEREFORE, Plaintiff demands judgment against Defendant for actual damages pursuant to Section 772.11, Florida Statutes, plus attorneys' fees, court costs, and such other relief as the Court deems just and proper.

### COUNT III
### CONVERSION

73.    Plaintiff incorporates by reference ¶¶ 19 through 26 (rental income), ¶¶ 37 through 42 (HELOC funds), and ¶¶ 49 through 54 (blocked access) as though fully set forth herein.

74.    Plaintiff had ownership or possessory rights in:

a.    Plaintiff's share of the HELOC funds Defendant withdrew from the Pinellas Property (at least $29,000.00);

b.    Plaintiff's share of rental income from the Manatee Property (at least $39,000.00);

c.    Plaintiff's monthly expense payments remitted to Defendant; and

d.    All financial records and accounts related to the subject properties funded by Plaintiff, whether directly or indirectly.

75.    Defendant wrongfully exercised dominion and control over these funds inconsistent with Plaintiff's rights—using HELOC funds for her sole benefit, retaining all rental income from the Manatee Property, misappropriating Plaintiff's monthly mortgage payments for the Manatee and Pinellas Properties for her own benefit, and blocking Plaintiff's access to financial records.

**WHEREFORE,** Plaintiff demands judgment against Defendant for the value of converted property, plus interest, punitive damages, and such other relief as the Court deems just and proper.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

76.     Plaintiff incorporates by reference ¶¶ 12 through 17 (relationship and Defendant's assumption of control establishing confidential relationship), ¶¶ 37 through 42 (procurement and recording of Power of Attorney), and ¶¶ 43 through 48 (Defendant's use of POA to acquire Colorado Property,  as though fully set forth herein.

77.     By virtue of the Power of Attorney and the confidential relationship between the parties, Defendant owed Plaintiff fiduciary duties of loyalty, good faith, full disclosure, and the duty to act solely in Plaintiff's best interests.

78.     Defendant breached her fiduciary duties by, among other things:

        a.      obtaining the POA through fraud, by misrepresenting it as a "credit verification" document;

        b.      using the POA to purchase property in Defendant's sole name using Plaintiff's funds, credit, and equity;

        c.      failing to disclose the true nature and effect of documents Plaintiff was asked to sign, including the Quitclaim Deeds;

        d.      self-dealing by acquiring property and survivorship rights for her own exclusive benefit using Plaintiff's resources;

        e.      failing to account for rental income, HELOC draws, and expense payments;

        f.      refinancing the Colorado Property solely in Defendant's name without Plaintiff's knowledge or consent; and

        g.      blocking Plaintiff's access to financial records to conceal breaches.

79.     Defendant's breaches were willful, wanton, and in bad faith.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, disgorgement of all benefits obtained through breach of fiduciary duty, punitive damages, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT V
## FRAUDULENT MISREPRESENTATION

80.     Plaintiff incorporates by reference ¶¶ 12 through 17 (relationship of trust),

¶¶ 19 through 26 (Manatee Property misrepresentations), ¶¶ 32 through 34 (Quitclaim

Deed misrepresentations), ¶¶ 40 through 41 (POA misrepresentation), and ¶¶ 43

through 48 (Colorado Property misrepresentations) as though fully set forth herein.

81.     Defendant made false representations of material fact to Plaintiff,

including but not limited to the following statements:

    a.     that the Manatee and Pinellas Properties would be shared
    investments with mutual benefits;

    b.     that the rental income from the Manatee Property would cover
    Plaintiff's mortgage payments;

    c.     that the 2023 Quitclaim Deeds were needed to make  routine
    "corrections" rather than instruments eliminating Plaintiff's testamentary rights
    and vesting Defendant with irrevocable rights upon Plaintiff's death;

    d.     that the document Plaintiff signed on April 2, 2024, was for "credit
    verification" rather than a Power of Attorney vesting Defendant with authority
    to purchase property with Plaintiff's credit, funds, and equity and to title the same
    in Defendant's name only; and

    e.     that Plaintiff's information was needed only to verify Defendant's
    credit qualifications for the Colorado Property, when Defendant intended to use
    the POA to acquire the property solely in her own name.

82.     Defendant knew these representations were false when made, or

Defendant made them recklessly without knowledge of their truth. Defendant made

these representations with the intent to induce Plaintiff's reliance.

83.     Plaintiff reasonably relied on Defendant's representations based on their

relationship of trust, and as a direct and proximate result, suffered damages including

loss of down payment funds, encumbrance of her home, loss of testamentary rights, and

deprivation of ownership interests in properties she funded.

**WHEREFORE,** Plaintiff demands judgment against Defendant for compensatory damages, rescission or reformation as appropriate, punitive damages, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT VI
## RESCISSION OF QUITCLAIM DEEDS/UNDUE INFLUENCE AND FRAUD

84.    Plaintiff incorporates by reference ¶¶ 12 through 17 (confidential relationship and Defendant's control) and ¶¶32 through 34 (Quitclaim Deed manipulation) as though fully set forth herein.

85.    In March 2023, Defendant caused Plaintiff to execute Quitclaim Deeds on both Florida properties, converting ownership from fee simple to joint tenancy with full rights of survivorship ("JTWROS"). As a result, Defendant obtained the automatic right to inherit Plaintiff's entire interest in both properties upon Plaintiff's death, eliminating Plaintiff's ability to devise her property interests to her adult children.

86.    The Quitclaim Deeds were procured through undue influence. Under Florida law, a presumption of undue influence arises when:

    a.    a confidential relationship exists;

    b.    the person alleged to have exerted influence was active in procuring the challenged transaction;

    c.    the person alleged to have exerted influence received an undue profit from the transaction; and

    d.    the opportunity to influence existed.

87.    All elements showing the Quitclaim Deeds were procured by undue influence are present in this instance, as follows:

    a.    **Confidential Relationship:** Defendant and Plaintiff were in a romantic relationship of thirteen years. Defendant had assumed control over

Plaintiff's financial affairs, held a Power of Attorney to act for her, and Plaintiff reposed trust and confidence in Defendant for financial guidance.

b.      **Active Procurement:** Defendant prepared, presented, and caused Plaintiff to execute the Quitclaim Deeds. Defendant told Plaintiff the deeds were "routine corrections" and did not explain their legal effect.

c.      **Undue Profit:** Defendant obtained survivorship rights worth more than $265,759.00—representing the approximate value of Plaintiff's equity in both properties—for zero consideration. Defendant contributed nothing to the down payments yet secured for herself the right to inherit Plaintiff's entire interest.

d.      **Opportunity to Influence:** Defendant resided with Plaintiff for extended periods, observed and exploited Plaintiff's cognitive decline, controlled Plaintiff's access to financial information, and isolated Plaintiff from independent legal or financial advice.

88.     Alternatively, the Quitclaim Deeds were procured through fraud.

a.      **Material Misrepresentation:** Defendant's representation to Plaintiff that the deeds were required for "routine corrections" was a material misrepresentation of fact.

b.      **Defendant's Knowledge of Falsity:** Defendant knew this representation was false—the deeds fundamentally altered ownership structure and eliminated Plaintiff's testamentary rights.

c.      **Plaintiff's Detrimental Reliance:** Plaintiff relied on Defendant's misrepresentation and suffered damages as a result.

89.     The Quitclaim Deeds are voidable and should be rescinded. Upon rescission, ownership of both Florida properties should revert to tenancy in common, restoring Plaintiff's right to devise her property interests to her children.

WHEREFORE, Plaintiff demands judgment rescinding the Quitclaim Deeds recorded in March 2023, declaring the joint tenancy with right of survivorship void, restoring ownership of both Florida properties to tenancy in common, and awarding such other relief as the Court deems just and proper.

## COUNT VII
## CONSTRUCTIVE TRUST

90.    Plaintiff incorporates by reference ¶¶ 11 and 55 (Plaintiff's status as at-risk adult under Colorado law), ¶¶19 through 26 (Manatee Property), ¶¶ 27 through 31 (Pinellas Property), ¶¶ 32 through 34 (Quitclaim Deed manipulation), ¶¶ 37 through 42 (HELOC and POA), and ¶¶ 43 through 48 (Colorado Property scheme) as though fully set forth herein.

91.    A constructive trust is an equitable remedy imposed to prevent unjust enrichment when property is obtained through fraud, breach of fiduciary duty, undue influence, or other wrongful conduct. Defendant holds interests in all three subject properties identified herein under circumstances making it inequitable for Defendant to retain the benefit of such interests.

92.    **Colorado Property— Constructive Trust:** Defendant holds sole legal title to the Colorado Property, which was acquired using funds (at least $29,000.00 from HELOC distribution),  drawn from Plaintiff's equity in the Pinellas Property, Plaintiff's credit, and authority derived from a fraudulently obtained Power of Attorney. Defendant took title in her sole name to property that in equity belongs, at least in part, to Plaintiff. Defendant's exploitation of Plaintiff—an at-risk adult under Colorado Revised Statutes §§ 18-6.5-102(14) and -103(5)—further supports imposition of a constructive trust under Colorado equity principles. A constructive trust should be imposed on the Colorado Property in its entirety, or alternatively on such portion as represents Plaintiff's equitable interest.

93.    **Florida Properties — Resulting Trust:** Plaintiff provided 100% of the down payment funds for both Florida properties: $125,500.00 for the Manatee Property

and $103,375.00 for the Pinellas Property—a total of $228,875.00. Defendant contributed nothing. When one party provides all the consideration for property, but title is taken jointly, a resulting trust arises in favor of the party who provided the consideration. Defendant holds her ownership interest in both Florida properties in resulting trust for Plaintiff's benefit.

94.    **Florida Properties — Constructive Trust:** Alternatively, Defendant obtained her ownership interest in both Florida properties through fraud, exploitation, and breach of fiduciary duty. Defendant misrepresented that the properties would be "shared investments" with mutual benefits when Defendant intended to secure ownership rights while contributing nothing and extracting maximum benefit for herself. Defendant exploited her confidential relationship with Plaintiff to obtain ownership interests without adequate consideration. Under these circumstances, equity imposes a constructive trust on Defendant's interest in both Florida properties.

95.    **Survivorship Rights:** Through fraudulent Quitclaim Deeds procured by undue influence, Defendant obtained survivorship rights in both Florida properties— the right to automatically inherit Plaintiff's entire interest upon death. These survivorship rights were obtained through wrongful conduct and should be held in constructive trust for Plaintiff's benefit. Alternatively, the Court should impose a constructive trust specifically on the survivorship rights, effectively severing the joint tenancy and converting ownership to tenancy in common.

96.    The value of the interests Defendant holds in constructive trust includes:

a.    **Colorado Property:** Defendant's entire interest (current equity approximately $30,889.00, or such greater amount as represents Plaintiff's equitable contribution);

b.    **Manatee Property:** Defendant's 50% ownership interest (equity approximately $68,913.00), plus survivorship rights (value equal to Plaintiff's 50% equity);

c.    **Pinellas Property:** Defendant's 50% ownership interest (equity approximately $196,846.00), plus survivorship rights (value equal to Plaintiff's 50% equity).

97.    Imposition of constructive trusts is necessary to prevent Defendant's unjust enrichment and restore to Plaintiff the value of her contributions and the property interests wrongfully obtained by Defendant.

WHEREFORE, Plaintiff demands that this Court: (a) impose a constructive trust on the Colorado Property in its entirety or in proportion to Plaintiff's equitable interest; (b) impose a constructive or resulting trust on Defendant's ownership interest in both Florida properties; (c) alternatively, impose a constructive trust on the survivorship rights Defendant obtained through the fraudulent Quitclaim Deeds; (d) order Defendant to convey such interests to Plaintiff or pay damages equivalent thereto; and (e) award such other relief as the Court deems just and proper.

### COUNT VIII
### UNJUST ENRICHMENT

98.    Plaintiff incorporates by reference ¶¶ 19 through 26 (Manatee Property contributions), ¶¶ 27 through 31 (Pinellas Property contributions), ¶¶ 32 through 34 (survivorship interests obtained), ¶¶ 43 through 48 (Colorado Property), and ¶¶ 57 through 61 (quantified damages) as though fully set forth herein.

99.    Plaintiff conferred substantial benefits upon Defendant, including:

a.    100% of down payment funds and closing costs for both Florida properties ($228,875.00+);

b.    down payment and closing costs for the Colorado Property ($29,000+);

c.    monthly expense payments ($148,000.00+);

d.    Plaintiff's share of rental income retained by Defendant ($39,000.00+); and

e.    survivorship rights in properties worth approximately $265,759.00 or more.

100.    Defendant accepted and retained these benefits under circumstances making retention inequitable. Defendant holds sole title to a $540,000.00 Colorado property, collected and retained all rental income, obtained survivorship rights in both Florida properties, and received Plaintiff's expense contributions—all while excluding Plaintiff from ownership benefits and financial transparency.

**WHEREFORE,** Plaintiff demands judgment against Defendant for restitution and disgorgement of all benefits unjustly retained, plus interest, and such other relief as the Court deems just and proper.

### COUNT IX
### INJUNCTIVE RELIEF (§ 825.1035, Fla. Stat.)

101.    Plaintiff incorporates by reference ¶ 5 (Plaintiff's status), ¶¶ 8 through 9 (elderly and vulnerable adult status), and ¶¶ 49 through 56 (ongoing concealment and December 8, 2025 threat) as though fully set forth herein.

102.    Defendant's exploitation is ongoing. On December 8, 2025, Defendant sent Plaintiff a threatening text message conditioning Plaintiff's housing stability on compliance with demands for additional funds.

103.    Absent injunctive relief, Defendant may further encumber, transfer, or dissipate properties, continue diverting rental income, or take additional actions to harm Plaintiff.

104.    Plaintiff seeks preliminary and permanent injunctive relief:

a.    restraining Defendant from transferring, encumbering, or dissipating the Colorado Property or Manatee Property;

b.    requiring Defendant to account for all rental income;

c.    requiring Defendant to provide access to financial records;

d.    restraining Defendant from exercising any authority under the POA; and

e.    such other relief as necessary to protect Plaintiff.

**WHEREFORE,** Plaintiff demands preliminary and permanent injunctive relief as described above, and such other relief as the Court deems just and proper.

## COUNT X
## EQUITABLE ACCOUNTING

105.    Plaintiff incorporates by reference ¶¶ 12 through 17 (confidential relationship), ¶¶ 19 through 26 (Manatee Property), and ¶¶ 37 through 48 (HELOC, POA, Colorado Property) as though fully set forth herein.

106.    Defendant, by virtue of the confidential relationship and POA, is obligated to account for all transactions involving Plaintiff's funds, credit, and property.

107.    Defendant has refused to provide financial records, and the accounts are complex, involving multiple properties, rental income, expenses, and HELOC transactions across two states over years.

**WHEREFORE,** Plaintiff demands that this Court order Defendant to provide a full accounting of all financial transactions, and enter judgment for amounts found due, plus interest, and such other relief as the Court deems just and proper.

## COUNT XI
## PARTITION — MANATEE PROPERTY (§ 64.011, Fla. Stat.)

108.    Plaintiff incorporates by reference ¶¶ 19 through 26 (Manatee Property) and ¶¶ 32 through 34 (JTWROS conversion) as though fully set forth herein.

109. **The Manatee Property:** On or about October 28, 2021, the parties purchased the single-family residential property located at 1418 29th Street West, Bradenton, Florida for $445,000.00, as an investment/short-term rental property.

110. **Plaintiff's Interest:** Plaintiff contributed the full $125,500.00 down payment plus closing costs and has paid at least $69,000.00 in monthly mortgage payments to date. Plaintiff has not received any mortgage or rent payments from Defendant nor has Plaintiff received her proportionate share (or any share) of the $78,000.00 in rental income for the Manatee Property to date. The parties currently hold title to the Manatee Property as joint tenants with right of survivorship.

111. **Lienholder:** There is an unpaid balance of a first mortgage owing to the lienholder in the amount of approximately $307,174.00. Therefore, the holder of said lien is a party to this proceeding. There are no others who are lien holders or otherwise have an interest in the Manatee Property.

112. **Not Divisible:** The Manatee Property cannot be equitably divided in kind and is suitable for partition by sale, with proceeds distributed according to the parties' respective interests.

113. **Partition:** Contingent upon imposition of a constructive trust or determination of Plaintiff's equitable interest pursuant to Count VII, Plaintiff seeks partition pursuant to Section 64.011, Florida Statutes.

114. **Credits and Setoff; Entitlement to Increased Value:** Plaintiff requests all credits and setoffs for maintenance and upkeep expenses for the Manatee Property, paid for with Plaintiff's funds, credit, proportionate share of the rental income, or equity since the date of purchase. Plaintiff is entitled to 100% of any increased value

of the Manatee Property since it was purchased, including but not limited to the value of any improvements paid for with Plaintiff's funds, credit, proportionate share of the rental income, or equity.  Specifically, Plaintiff is entitled to equitable adjustments for:

      a.     Her contribution of the full $125,500 down payment plus closing costs;

      b.     rental income wrongfully retained by Defendant;

      c.     Plaintiff's share of market value rent from Defendant for periods when Defendant occupied the property;

      d.     credit for all monthly payments remitted to Defendant to the extent such payments were misappropriated rather than applied to the mortgage; and

      e.     excess expense payments made by Plaintiff; and

      f.     Plaintiff's exclusion from use while Defendant occupied it rent-free.

115.   **Attorney's Fees and Costs:** Plaintiff has employed the law firm of Brava Law PLLC to represent her in this  action and has agreed to pay a reasonable attorney's fee, costs, and suit money for this representation. Plaintiff requests an award of attorney's fees for this partition action pursuant to Florida law.

WHEREFORE, Plaintiff demands partition of the Manatee Property, sale, and distribution of proceeds with equitable adjustments in Plaintiff's favor, and such other relief as the Court deems just and proper.

## COUNT XII
## PARTITION — PINELLAS PROPERTY (§ 64.011, Fla. Stat.)

116.   Plaintiff incorporates by reference ¶¶ 27 through 31 (Pinellas Property), ¶¶ 32 through 34 (JTWROS conversion), and ¶¶ 37 through 39 (HELOC) as though fully set forth herein.

117.    **The Pinellas Property:** On or about December 29, 2021, Plaintiff and Defendant purchased a single family residence located at **4136 52nd Avenue South, St. Petersburg, Florida** (the "Pinellas Property") for $407,500.00.

118.    **Plaintiff's Interest:** Plaintiff contributed the full $103,375.00 down payment plus closing costs, pays 100% of the monthly mortgage payment, and pays all other property expenses. Defendant contributed nothing. Plaintiff currently resides in the Pinellas Property as her homestead; however, the parties currently hold title to the Pinellas Property as joint tenants with right of survivorship.

119.    **Lienholders:** There is an unpaid balance of a first mortgage owing to the first lienholder in the amount of approximately $210,654.00. The Pinellas Property is also encumbered by a HELOC with an outstanding balance of approximately $66,000.00. Therefore, the holders of said liens are parties to this proceeding. There are no others who are lien holders or otherwise have an interest in the Pinellas Property.

120.    **Not Divisible:** The Pinellas Property cannot be equitably divided in kind and is suitable for partition by sale, with proceeds distributed according to the parties' respective interests.

121.    **Partition:** Contingent upon imposition of a constructive trust or determination of Plaintiff's equitable interest pursuant to Count VII, Plaintiff seeks partition pursuant to Section 64.011, Florida Statutes.

122.    **Credits and Setoff; Entitlement to Increased Value:** Plaintiff requests all credits and setoffs for maintenance and upkeep expenses for the Pinellas Property, which she has paid since the date of purchase. Specifically, Plaintiff is entitled to equitable adjustments for:

a.     her contribution of the full  $103,375.00 down payment;

b.     the  HELOC debt incurred for Defendant's sole benefit;

c.     credit for all monthly payments remitted to Defendant to the extent such payments were misappropriated rather than applied to the mortgage; and

d.     Plaintiff is entitled to 100% of any increased value of the Pinellas Property since it was purchased, including but not limited to the value of the improvements.

123.   Alternatively, Plaintiff seeks declaratory judgment that Defendant is obligated to satisfy the HELOC debt.

124.   **Attorney's Fees and Costs:** Plaintiff has employed the law firm of Brava Law PLLC to represent her in this  action and has agreed to pay a reasonable attorney's fee, costs, and suit money for this representation. Plaintiff requests an award of attorney's fees for this partition action pursuant to Florida law.

**WHEREFORE,** Plaintiff demands partition of the Pinellas Property if appropriate, or alternatively, declaratory relief regarding the HELOC, and such other relief as the Court deems just and proper.

## COUNT XIII
## PARTITION — COLORADO  PROPERTY (C.R.S. § 38-28-101)

125.   Plaintiff incorporates by reference ¶¶ 11 and 55 (at-risk adult status) and ¶¶ 43 through 48 (Colorado Property) as though fully set forth herein.

126.   **The Property:** On or about April 4, 2024, Defendant purchased a single-family residential property located at 657 West 1st Street, Loveland, Colorado (the "Colorado Property") for $514,900.00.

127.   **Plaintiff's Interest:** Defendant holds title to the Colorado Property  "In Severalty." Defendant did not title the property jointly with Plaintiff, despite having

acquired it  through exploitation of Plaintiff, an at-risk adult under C.R.S. § 18-6.5-102(14), using Plaintiff's funds, credit, home equity, and POA authority.

128.    **Lienholder:** There is an unpaid balance of a first mortgage owing to the lienholder in the amount of approximately $509,111.00  as of the date of this request for partition. Therefore, the holder of said lien is a party to this proceeding. There are no others who are lien holders or otherwise have an interest in the Colorado Property.

129.    **Not Divisible:** The Colorado Property cannot be equitably divided in kind and is suitable for partition by sale, with proceeds distributed according to the parties' respective interests.

130.    **Partition:** Contingent upon imposition of a constructive trust or determination of Plaintiff's equitable interest pursuant to Count VII, Plaintiff seeks partition under C.R.S. § 38-28-101, et seq.

131.    **Credits and Setoff; Entitlement to Increased Value:** Plaintiff requests all credits and setoffs for maintenance and upkeep expenses for the Colorado Property paid for with Plaintiff's funds, credit, or equity since the date of purchase. Plaintiff is entitled to 100% of any increased value of the Colorado Property since it was purchased, including but not limited to the value of any improvements paid for with Plaintiff's funds, credit, or equity.

132.    **Attorney's Fees and Costs:** Plaintiff has employed the law firm of Brava Law PLLC To represent her in this  action and has agreed to pay a reasonable attorney's fee, costs, and suit money for this representation. Plaintiff requests an award of attorney's fees for this partition action pursuant to Colorado law.

**WHEREFORE,** Plaintiff demands, following imposition of a constructive trust or determination of equitable interests, partition of the Colorado Property, sale, and distribution of proceeds, and such other relief as the Court deems just and proper.

## VII.    DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ROBIN OWENS, by and through the undersigned counsel,  respectfully requests that this honorable Court enter judgment against Defendant, ANGELA WALDON, and award the following relief:

A.    Compensatory damages in an amount to be determined at trial;

B.    Actual damages pursuant to Section 772.11, Florida Statutes;

C.    Punitive damages pursuant to Section 415.1111, Florida Statutes, and common law;

D.    Rescission of the Quitclaim Deeds, restoration of tenancy in common, and such reformation of title as necessary;

E.    Imposition of constructive trusts on the Colorado Property and Defendant's interests in the Florida Properties, or alternatively on the survivorship rights obtained through fraud;

F.    Restitution and disgorgement of all benefits unjustly retained by Defendant;

G.    Preliminary and permanent injunctive relief restraining Defendant from transferring or encumbering the properties, requiring deposit of rental income into escrow, and such other injunctive relief as necessary to protect Plaintiff;

H.    An equitable accounting of all financial transactions involving Plaintiff's funds, credit, equity,  and property;

I.    Partition of the Manatee Property, Pinellas Property, and Colorado Property, with equitable adjustments and offsets reflecting Plaintiff's contributions;

J.  Declaratory judgment voiding the Power of Attorney and establishing the parties' respective rights;

K.  Attorney's fees and costs pursuant to Sections 772.11, 415.1111, and 64.081, Florida Statutes;

L.  Pre- and post-judgment interest; and

M.  Such other and further relief as the Court deems just and proper.

## VERIFICATION

I understand that I am swearing or affirming under oath the truthfulness of the statements and claims set forth in this document. I understand that the punishment for knowingly making a false statement includes fines and/or imprisonment.

**UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF.**

*Robin Owens*

**Date:** 12/29/2025

**Robin Owens, Plaintiff**

**Dated:** December 30, 2025

**Respectfully submitted:**

*/s/ Jamie Marcario*
Jamie Marcario, Esq.
Florida Bar No.: 0089366
Brava Law
136 4th Street North, Suite 201
St. Petersburg, FL 33701
Phone: 727-868-6195
jamie@bravalaw.com
eservice@bravalaw.com
rose@bravalaw.com
*LEAD COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served upon the Defendant, Angela Waldon, at her last known address, which is believed to be 657 1st Street, Loveland, Colorado 80537, via process server. I further certify that no other party requires service by other means.

**/s/ Jamie Marcario,** Esq.
Jamie Marcario
Fla. Bar No. 0089366